1   PAUL M. GLEASON  State Bar No.: 155569
    TOREY JOSEPH FAVAROTE  State Bar No.: 198521
2   GLEASON & FAVAROTE, LLP
    4014 Long Beach Blvd., Suite 300
3   Long Beach, California 90807
    Telephone:  (213) 452-0510
4   Facsimile:   (213) 452-0514
    pgleason@gleasonfavarote.com
5   tfavarote@gleasonfavarote.com

6   Attorneys for Defendants TRANSDEV
    SERVICES INC. and TRANSDEV
7   NORTH AMERICA, INC.

8

9

10                    **UNITED STATES DISTRICT COURT**

11                  **NORTHERN DISTRICT OF CALIFORNIA**

12

13

14   DERRICK SCOTT and REYNA              )   Case No.
     CUEVAS on behalf of themselves, all  )
15   others similarly situated, and on behalf of )   **DEFENDANT TRANSDEV**
     the general public,                  )   **SERVICES, INC.'S NOTICE OF**
16                                         )   **REMOVAL OF CIVIL ACTION**
                        Plaintiff,         )   **FROM STATE COURT**
17                                         )
        v.                                 )   [28 U.S.C. §§ 1331, 1441 and 1446]
18                                         )
     TRANSDEV SERVICES, INC.;              )
19   TRANSDEV NORTH AMERICA, INC.;         )   State Action Filed:    January 24, 2017
     and DOES 1-100,                       )   Trial Date:            None
20                                         )
                        Defendants.        )
21                                         )
                                           )
22                                         )
                                           )
23                                         )
                                           )
24                                         )
     _____       )
25                                         )

26   / / /

27   / / /

28   / / /

**TO THE CLERK OF THE ABOVE-TITLED COURT AND PLAINTIFFS DERRICK SCOTT AND REYNA CUEVAS, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that defendants TRANSDEV SERVICES INC. and TRANSDEV NORTH AMERICA, INC. ("Defendants") hereby affect the removal of the above-referenced action from the Superior Court in the State of California for the County of Alameda to the United States District Court for the Northern District of California pursuant to 28 U.S.C. sections 1331, 1441 and 1446.

This Notice is based upon the original jurisdiction of the federal district court over the parties under 28 U.S.C. section 1331 based upon the existence of a federal question and diversity under the Class Action Fairness Act ("CAFA"). Defendants make the following allegations in support of its Notice of Removal:

### JURISDICTION

1. This action is one over which this court has original jurisdiction under 28 U.S.C. section 1331 and is one which may be removed by Defendants pursuant to 28 U.S.C. section 1441 and 1446.

2. On or about January 24, 2017, plaintiff Derrick Scott ("Scott") filed an original complaint in the Superior Court of the State of California in the County of Alameda, entitled, <u>DERRICK SCOTT on behalf of himself, all others similarly situated, and on behalf of the general public v. TRANSDEV SERVICES, INC; TRANSDEV NORTH AMERICA, INC.; and DOES 1-100</u>, as case number RG 17846786. On or about April 26, 2017 plaintiffs filed an amended complaint adding Reyna Cuevas ("Cuevas") as an additional named plaintiff (collectively, Scott and Cuevas shall be referred to as "Plaintiffs"). The Complaint asserts seven causes of action for: (1) Failure To Pay All Straight Time Wages; (2) Failure to Pay Overtime; (3) Failure to Provide Meal Periods (Lab. Code §§ 226.7, 512); (4) Failure to Authorize and Permit Rest Periods (Lab. Code § 226.7; IWC Wage Order Nos. 9-1998, 9-2000, 9-2001(12); Cal Code Regs. Title 8 § 11090); (5) Knowing and

Intentional Failure to Comply with Itemized Employee Wage Statement Provisions (Lab. Code § 226); (6) Failure to Pay All Wages Due at the Time of Termination of Employment (Lab. Code §§201-203); and (7) Violation of Unfair Competition Law (Bus. & Prof. Code § 17200, et seq.).  Plaintiff Derrick Scott filed a complaint against Transdev Services, Inc. and Transdev North America, Inc. on January 24, 2017.  A true and correct copy of the complaint is attached to the Declaration of Torey Joseph Favarote ("Favarote Decl.") as **Exhibit A**.  Plaintiffs Derrick Scott and Reyna Cuevas ("Plaintiffs") filed a first amended complaint against Defendants on April 26, 2017.  True and correct copies of the summons, civil cover sheet and first amended complaint served on Defendants are attached to Favarote Decl. as **Exhibit B**.  A true and correct copy of the Service of Process Notices that were provided to Defendants by their agent for service of process is attached to Favarote Decl. as **Exhibit C**.  On July 5, 2017, Defendants filed an answer to Plaintiffs' first amended complaint in Alameda County Superior Court.  A true and copy of the answer is attached to Favarote Decl. as **Exhibit D**.

1.      To Defendants' knowledge, no other papers or processes have been filed or received in this matter by Defendants.

### INTRADISTRICT ASSIGNMENT

2.      Northern District of California Civil Local Rule 3-2 provides that all civil actions arising in the counties of Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Napa, San Francisco, San Mateo or Sonoma Counties shall be assigned to the San Francisco or Oakland Divisions.  See Northern District Local Rules 3-2(c) and (d), and 3-5(b).  Plaintiff filed this case in Alameda County.

### FEDERAL QUESTION JURISDICTION

3.      This Court has original jurisdiction over this civil action under 28 U.S.C. § 1331, which provides that the federal district courts have original jurisdiction in actions "arising under the Constitution, laws, or treatises of the United States."  Accordingly, this action may be removed pursuant to 28 U.S.C. section

2.

1441(b) because Plaintiffs' claims arise under federal law, namely, the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151, et seq.  Specifically, Plaintiffs were unionized employees covered by collective bargaining agreements ("CBA") that were deemed appropriate by the National Labor Relations Board.  (Declaration of Anna Hernandez ("Hernandez Decl."), ¶¶ 2-4, Exs. 1, 2 and 3.)  Specifically, the 2011, 2015 and 2017 CBAs that governed Plaintiffs' employment provide for how overtime is calculated and paid.  (Hernandez Decl., ¶¶ 2-4, Ex. 1, page 11; Ex. 2, page 11, Ex. 3 pg. 11.)  Plaintiffs' state law claims are for unpaid wages and overtime, as well as meal periods and rest breaks are premised on the terms of these CBAs and the alleged breach by Defendants of the CBAs regarding these claims.

4.     This Court also has original jurisdiction over this action under 28 U.S.C. section 1331, and is one which may be removed to this Court by the Defendants pursuant to the provisions of 28 U.S.C. section 1441(b) in that the relief sought in the Complaint arises under and is preempted by Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) ("LMRA").

5.     This Court has original jurisdiction over this action pursuant to Section 301 of the LMRA.  Section 301(a) states: "Suits for violation of [collective bargaining agreements] … may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

6.     Section 301 preempts "claims founded directly on rights created by collective bargaining agreements, and also claims which are substantially dependent on the analysis of a collective bargaining agreement."  Paige v. Henry J. Kaiser Co., 826 F.2d 857, 861 (9th Cir. 1987) (citing Caterpillar Inc. v. Williams, 482 U.S. 386 (1987) cert. denied, 486 U.S. 1054 (1988)); Allis Chalmers Corp. v. Lueck, 471 U.S. 202 (1985); Lingle v. Norge Div. Of Magic Chef, Inc., 486 U.S. 399 (1998).

7.     The preemptive force of Section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement and any state

3.

1    claim whose outcome depends on analysis of the terms of the agreement.  Young v.

2    Anthony's Fish Grottos, Inc., 830 F.2d 993, 999 (9th Cir. 1983).

3         8.    To determine whether Section 301 preempts all or some of Plaintiffs'

4    claims and/or any of the members of the putative class(es) they seek to represent, the

5    Court must inquire whether "the claims can be resolved only by referring to the

6    terms of the collective bargaining agreement."  Young, supra, 830 F.2d at 999.  If

7    evaluation of a claim is inextricably intertwined with consideration of the terms of

8    the labor contract, it is preempted and may be removed to federal court.  In rendering

9    this analysis, the Court may properly look beyond the face of the Complaint to

10   determine whether the claims are, in fact, Section 301 claims artfully plead to avoid

11   federal jurisdiction.  See e.g., Young, supra, 830 F.2d at 997; see Olguin v.

12   Inspiration Consolidated Copper Co., 740 F.2d 1468, 1472 (9th Cir. 1984) (overruled

13   in part on other grounds) (court may look "outside the four corners of the complaint

14   to support removal.").

15        9.    In order to determine whether resolution of a state claim requires

16   interpretation of a collective bargaining agreement, the Court must "examin[e] the

17   terms of the agreement, the elements of the [claim] involved, and the facts which

18   defendant may assert in defense."  Moreau v. San Diego Transit Corp., 210

19   Cal.App.3d 614, 624 (1989), relying in part on Hanks v. General Motors Corp.,859

20   F.2d 67, 70 (8th Cir. 1988) (the affirmative defenses must be considered in

21   determining whether resolution of the state law claim requires construing the

22   collective bargaining agreement); accord Newberry v. Pacific Racing Association,

23   854 F.2d 1142, 1146 (9th Cir. 1988) (determining the scope of Section 301

24   preemption is not based on how the complaint is framed but on whether the claims

25   can be resolved only by referring to the terms of the collective bargaining

26   agreement); see Olguin, 740 F.2d at 1472.

27        10.   State overtime laws do not apply to employees covered by a collective

28   bargaining agreement that provides an hourly rate of at least 30 percent more than

4.

1
2
3
4
5
6

the minimum wage and "premium" wage rates for overtime work.  Labor Code § 514; 8 C.C.R. § 11040, 3(1); see Lujan v. Southern Calif. Gas Co., 96 Cal.App.4th 1200, 1204 (2002).  If determining whether the collective bargaining agreement overtime rate is a "premium" rate requires interpretation of the collective bargaining agreement, the LMRA preempts the state law overtime claims.  Firestone v. Southern Calif. Gas Co., 219 F.3d 1063, 1066 (9th Cir. 2000).

7
8
9
10
11
12
13
14

11.    If the parties so intend, employees may by agreement be required to utilize alternative dispute resolution procedures such as arbitration before commencing suit on any claim arising from their employment, including statutory claims.  Mitsubishi Motors v. Soler Chrysler-Plymouth, 473 U.S. 614, 627 (1985); Chappel v. Laboratory Corp. Of America, 232 F.3d 719, 724 (9th Cir. 2000).  The employee's failure to exhaust such a dispute through these resolution mechanisms may bar any lawsuit on the claim, unless the employee can show that the agreement to arbitrate was unenforceable or invalid.  Chappel, 232 F.3d at 724.

15
16
17
18
19
20
21
22
23
24
25

12.    Effective January 01, 2011 through December 31, 2014, Defendant[1] entered into a CBA with Teamsters Local 315 (hereinafter "the 2011 CBA"). (Hernandez Decl., ¶ 2, Ex. 1.)  The 2011 CBA covers all drivers/bus operators which is the position that Plaintiffs worked for defendant Transdev Services, Inc. on its Napa contract.  (Hernandez Decl., Ex. 1, pgs. 4, 10.)  Additionally, the 2011 CBA sets forth specific provisions addressing hours of work (Hernandez Decl., Ex. 1, pages 10-12), employees' regular rates of pay (Hernandez Decl., Ex. 1, page 17-18), and calculation of overtime premium pay (Hernandez Decl., Ex. 1, page 11).  The 2011 CBA also sets forth a grievance and arbitration procedure available as the exclusive forum for resolution of disagreements: "A grievance is a claim that the Company or Union has violated an express, specific provision of this agreement.

26
27
28

[1] Transdev Services, Inc. is the successor to Veolia Transportation Services, Inc. (Hernandez Decl., ¶ 1.)

5.

The following procedures for the settlement of grievances must be followed."
(Hernandez Decl., Ex. 1, pages 27-29.)

13.     Effective January 1, 2015 through December 31, 2016, Defendant
entered into a CBA with Teamsters Local 315 (hereinafter "the 2015 CBA").
(Hernandez Decl., ¶ 2, Ex. 2.)  The 2015 CBA covers all drivers/bus operators
employed by defendant Transdev Services, Inc. on its Napa contracts.  (Hernandez
Decl., Ex. 2, pages 4, 10.)  Additionally, the 2015 CBA sets forth specific provisions
addressing hours of work (Hernandez Decl., Ex. 2, pages 10-11), employees' regular
rates of pay (Hernandez Decl., Ex. 2, page 17-19), and calculation of overtime
premium pay (Hernandez Decl., Ex. 2, page 11).  The 2015 CBA also sets forth a
grievance and arbitration procedure available as the exclusive forum for resolution of
disagreements: "A grievance is a claim that the Company or Union has violated an
express, specific provision of this agreement.  The following procedures for the
settlement of grievances must be followed."  (Hernandez Decl., Ex. 2, pages 27-29.)

14.     Effective January 1, 2017 through December 31, 2019, Defendant
entered into a CBA with Teamsters Local 315 (hereinafter "the 2017 CBA").
(Hernandez Decl., ¶ 2, Ex. 3.)  The 2017 CBA covers all drivers/bus operators
employed by defendant Transdev Services, Inc. on its Napa contracts.  (Hernandez
Decl., Ex. 3, pages 4, 9.)  Additionally, the 2017 CBA sets forth specific provisions
addressing hours of work (Hernandez Decl., Ex. 3, pages 11), employees' regular
rates of pay (Hernandez Decl., Ex. 3, page 17-18), and calculation of overtime
premium pay (Hernandez Decl., Ex. 3, page 11).  The 2017 CBA also sets forth a
grievance and arbitration procedure available as the exclusive forum for resolution of
disagreements: "A grievance is a claim that the Company or Union has violated an
express, specific provision of this agreement. The following procedures for the
settlement of grievances must be followed."  (Hernandez Decl., Ex. 3, pages 28-29.)

15.     At all times relevant to their employment with defendant Transdev
Services, Inc., Plaintiffs were members of Teamsters Local 315 and were subject to

the applicable CBAs for the relevant time period in this putative class action. (Hernandez Decl., ¶ 3.)

16.     The putative class, including Plaintiffs, which Plaintiffs seek to represent and on whose behalf Plaintiffs assert claims, are drivers/operators who were members of Teamsters Local 315 as well as other unions. The putative class members were subject to not only the aforementioned CBAs but at least a dozen other CBAs during the applicable class period. (Hernandez Decl., ¶¶ 3.)  CBAs which had their own specific provisions and terms regarding overtime and other terms and conditions of employment.  (Hernandez Decl., ¶¶ 2-4.)

17.     From January 1, 2008 to June 30, 2014, the minimum wage was $8.00. From, July 1, 2014, the California minimum wage was $9.00.[2]  The 2011 CBA set drivers'/operators' hourly regular rates of pay between $12.22 and $19.70. (Hernandez Decl., Ex. 1, page 17.)  The 2015 CBA set drivers'/operators' hourly regular rates of pay between $12.22 and $21.65.  (Hernandez Decl., Ex. 2, page 17-18.)  The 2017 CBA set drivers'/operators' hourly regular rates of pay between $12.22 and $23.64.  (Hernandez Decl., Ex. 3, page 17-18.)  These rates of pay are not less than 30 percent more than the state minimum wage rate.

18.     As the regular rate set by the CBAs was at all relevant times at least 30 percent more than the minimum wage and provided for "premium" wage rates for overtime work, state overtime laws do not apply to Plaintiffs or the putative class members that worked under the same CBA as the Plaintiffs.  All requirements of Labor Code section 514's exception to the application of overtime premium pay requirements are met.  Accordingly, Plaintiffs' right to overtime premium pay is as set forth in the applicable CBAs.  See Firestone, 219 F.3d at 1066.

19.     Plaintiffs alleges causes of action (the First and Second Causes of Action) under the California Labor Code for the alleged failure to pay straight and

---

[2] Information regarding the history of California's minimum wage is available at: http://www.dir.ca.gov/iwc/minimumwagehistory.htm.

**DEFENDANT TRANSDEV SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

1
2
3
4
5
6
7
8
9
10

overtime wages.  Plaintiffs also allege that Defendants failed to provide accurate wage statements (Fifth Cause of Action), failed to promptly pay wages owed on termination of employment (Sixth Cause of Action) and engaged in unfair, fraudulent and unlawful business practices (Seventh Cause of Action).  Plaintiffs assert these causes of action on behalf of a purported class of "[a]ll persons who are employed or have been employed by Defendants in the State of California as hourly, Non-Exempt bus drivers, drivers, and/or other similar job designations and titles during the period of the relevant statute of limitations."  (Favarote Decl., Ex. B, ¶ 41.)  Eleven sub-classes are defined as all members of the California Class based on various theories of liability.  (Favarote Decl., Ex. B, ¶ 41.)

11
12
13
14
15
16
17
18
19
20

20.    To determine whether the foregoing CBAs must be interpreted to resolve the named Plaintiffs' overtime claims and if Plaintiffs' claims are preempted by the LMRA, the Court must examine the terms of the applicable CBAs, the elements of the claims involved and the facts which Defendants may assert in defense.  As this analysis reveals, the Court can only resolve Plaintiffs' claims, and the claims of those that they seek to represent who worked under the same and/or different CBA as them, by referring to the terms of the specific CBA in question because Plaintiffs' claims for failure to pay overtime wages, as well as all claims derivative of that claim, are inextricably intertwined with consideration of the terms of the CBAs.  For instance, the CBAs must be interpreted to determine:

21
22
23
24

a.    Whether the applicable CBAs provide an hourly rate of at least 30 percent more than the minimum wage and "premium" wage rates for overtime work such that the exception to overtime premium pay requirements set forth in Labor Code section 514 applies;

25
26
27
28

b.    Whether the applicable CBA's overtime pay provisions are enforceable and, to the extent that they are, whether Plaintiffs and the purported class members were paid overtime premium pay in accordance with these provisions;

c.  Whether the exclusive grievance and arbitration dispute resolution procedures set forth in the applicable CBAs are enforceable; and

d.  Whether the statutory wage and hour claims asserted by Plaintiffs are barred by their failure to exhaust contractual grievance and/or arbitration procedures.

21.  Thus, the resolution of Plaintiffs' overtime premium claims, and the resolution of all claims derivative thereof, depends upon the interpretation of one or more collective bargaining agreements – as such, these claims are preempted by Section 301.  See *e.g.*, Mireles v. Paragon Systems, Inc., 2014 WL 4385453, Case No. 13cv122, *6 (S.D. Cal. 2014) (because the exemption of Section 510 applies, the overtime rights plaintiff has exist entirely as a result of the CBAs; accordingly, plaintiff's overtime claim is preempted under the LMRA § 301); Levy v. Skywalker Sound, 108 Cal.App.4th 753, 768-769 (2003) (holding that claim for unpaid wages under California Labor Code § 204 was preempted by Section 301 because it required interpretation of a CBA); Tift v. Commonwealth Edison Co., 366 F.3d 513, 519-520 (7th Cir. 2004) (holding that action under state law was preempted because whether the CBA "properly incorporated the directives" of state law and whether the defendants violated the state law would require "more than the mere reference" to the CBA); Firestone, 219 F.3d at 1066 (plaintiffs' overtime claims under the California Labor Code preempted by Section 301 of the LMRA when collective bargaining agreement contained formula for calculation of overtime rates).

22.  Because resolution of Plaintiffs' claims is inextricably intertwined with the interpretation of the CBAs, state law is "completely preempted" by federal law with respect to these claims, and this matter is properly removable pursuant to 28 U.S.C. § 1441.  Lingle, 486 U.S. 399 (1988); Allis Chalmers, 471 U.S. 202 (1985); Franchise Tax Board, *supra*, 463 U.S. 1; Stallcop v. Kaiser Found. Hosp., 820 F.2d 1044 (9th Cir. 1987); Miller v. AT&T Network Systems, 820 F.2d 543 (9th Cir. 1988).

9.

23.     That Plaintiffs have not specifically pled a Section 301 claim is of no consequence.  <u>Fristoe v. Reynolds Afetals Co.</u>, 615 F .2d 1209 (9th Cir. 1990). Plaintiffs cannot defeat removal by "artfully pleading" their claims and omitting reference to preemptive federal law.  <u>IBEW v. Hechler</u>, 481 U.S. 851 (1987) (state law tort action "treated as Section 301 claim" by the court); <u>Laws v. Calmet</u>, 852 F.2d 431, 432 (9th Cir. 1988) overruled in part on other grounds (alleged state claim treated as artfully pled section 301 claim and preempted); <u>Hyles v. Mensing</u>, 849 F.2d 1213, 1217 (9th Cir. 1988) (preemption affirmed notwithstanding plaintiff's artful omission of references to preemptive federal law); <u>Olguin</u>, *supra*, 7 40 F .2d at 14 72-7 4 (preemption affirmed despite attempt to plead around federal jurisdiction). Under the "artful pleading" doctrine, the Complaint must be re-characterized as one arising under the collective bargaining agreement.  <u>Laws</u>, *supra*, 852 F.2d at 432; <u>Hyles</u>, *supra*, F.2d at 1215-1216; <u>Olguin</u>, *supra*, 740 F.2d at 1472-1474.

24.     To the extent that there are remaining claims for relief that do not arise under Section 301 or are not completely preempted by Section 301, these claims are within the supplemental jurisdiction of this Court under 29 U.S.C. Section 1367(a) in that they are so related to the Section 301 claims that they form part of the same case or controversy under Article III of the United States Constitution.  Thus, this action is removable in its entirety.

## SUPPLEMENTAL JURISDICTION

25.     The Court has supplemental jurisdiction over Plaintiffs' remaining claims because they form part of the same case or controversy which is the subject of Plaintiffs' federal claim.  28 U.S.C. §§ 1367(a), 1441(a); <u>see also</u> <u>City of Chicago v. Int'l College of Surgeons</u>, 522 U.S. 156, 156-59, 165 (1997) (the District Court properly permitted removal and exercised supplemental jurisdiction over plaintiff's state law claims where both of plaintiffs' state and federal claims derived from "a common nucleus of operative fact").  Specifically, all the claims in the dispute arise over Defendants' alleged wrongful policy and practice to fail to pay employees all

10.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

wages earned and provide compliant meal and rest periods.  Plaintiffs' remaining claims are derivative.  Therefore, the Court has jurisdiction over all claims in the Complaint.

## CAFA JURISDICTION

26.  Basis of Original Jurisdiction: Alternatively, this Court has original jurisdiction of this action under CAFA.  Section 1332(d)(2) and (4) provides that a district court shall have original jurisdiction of a class action with 100 or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000.  Section 1332(d)(2) further requires that any member of the putative class must be a citizen of a state different from any defendant.

27.  Plaintiffs' Citizenship: As alleged in the complaint, Plaintiffs are residents of California.  (Favarote Decl., Ex. B, ¶ 27).  For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983).  Residence is prima facie evidence of domicile.  State Farm Mutual Auto Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994).  Accordingly, Plaintiffs are citizens of the State of California.

28.  Defendant's Citizenship: Transdev Services, Inc. was, at the time of the filing of the state court action, and remains a corporation incorporated under the laws of the State of Maryland, with its principal place of business in the State of Illinois. Transdev North America, Inc. was, at the time of the filing of the state court action, and remains a corporation incorporated under the laws of the State of Maryland, with its principal place of business in the State of Illinois.  (Hernandez Decl., ¶ 4.) Pursuant to 28 U.S.C. section 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  The Supreme Court has established the proper test for determining the principal place of business of a corporation for purposes of diversity jurisdiction.  Hertz Corp. v. Friend, 559 U.S. 777 (2010).  The Court held that

11.

"'principal place of business' [as contained in section 1332(c)] is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." Id.  The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters—provided that the headquarters is the actual center of direction, control and coordination…" Id.  Defendants' headquarters, and their executive and senior management personnel as well as their primary management operations are both located in Illinois. (Hernandez Decl., ¶ 4.)  Similarly, Transdev North America, Inc.'s corporate departments are also in Illinois.  (Id.)  Moreover, the corporate officers of Transdev Services, Inc. and Transdev North America, Inc. actually direct, control and coordinate the corporation's activities from Transdev Services, Inc.'s and Transdev North America, Inc.'s offices in Illinois.  (Hernandez Decl., ¶ 4.)  The corporate human resources department, employee benefits department, legal department, procurement department, accounting department, and IT department utilized by Transdev Services, Inc. are located in Lombard, Illinois.  (Hernandez Decl., ¶ 4.)  Simply put, Defendants' center of "direction, control and coordination" is located in the State of Illinois; thus, for diversity purposes, Defendants must be considered citizens of Illinois and Maryland (their state of incorporation).  Accordingly, none of the defendants are citizens of the State of California.

29.    The citizenship of fictitiously-named "Doe" defendants is to be disregarded for the purposes of removal.  28 U.S.C. section 1441(a).

## AMOUNT IN CONTROVERSY UNDER CAFA

30.    Removal is appropriate when it is more likely than not that the amount is controversy exceeds the jurisdictional requirement, which in this case is $5,000,000 in the aggregate.  See, e.g., Cohn v. PetsMart, Inc., 281 F.3d 837, 839-40 (9th Cir. 2002).

31.    This action involves Plaintiffs' alleged claims against Defendants for: failure to pay all straight time wages, failure to pay overtime, failure to provide meal

12.

periods, failure to authorize and permit rest periods, knowing and intentional failure to comply with itemized employee wage statement provision, failure to pay all wages due at the time of termination of employment in violation of the Labor Code, and unfair competition. Plaintiffs' prayer for relief seeks an award of compensatory damages, economic/special damages, compensation for all time worked, not being provided paid meal or rest breaks, damages for failure to comply with wage statement provisions, waiting time penalties, restitution to the class, prejudgment interest on all damages awarded, attorneys' fees and costs, and such other and further relief as the Court deems prudent. (See Favarote Decl., Ex. B, Prayer For Relief, page 47.) Plaintiffs seek subclasses for the claims, each on behalf of non-exempt bus drivers during the relevant statute of limitations on each claim.

32.   Amount in Controversy. Without conceding that Plaintiffs or the purported class members are entitled to any damages or could recover damages in any amount, the amount in controversy in this putative class action, in the aggregate, is well in excess of $5,000,000, exclusive of interest and costs.

a.   Variables. During the time period of January 24, 2016 to the present, applicable to Plaintiffs' wage statement claim, Transdev Services, Inc. employed at least 2,002 non-exempt employees as bus drivers in California. (Hernandez Decl., ¶ 6; Favarote Decl., ¶ 7.) The average rate of pay among this group of employees is approximately $14.26 during this time period. (Id.) This time period consists of at least 48,780 total pay periods for this group of employees. (Id.) During the time period of January 24, 2014 to the present, applicable to Plaintiffs' waiting time penalties claim, at least 1,362 putative class members separated from employment with Transdev Services, Inc. (Hernandez Decl., ¶ 7; Favarote Decl., ¶ 8.) The average final rate of pay among this group of former employees was approximately $12.06 during this time period. (Id.) During the time period of January 24, 2013 to the present, applicable to Plaintiffs' unpaid wage claims, Transdev Services, Inc. and/or

13.

Veolia Transportation Services, Inc. employed at least 2,866 non-exempt bus drivers/operators in California.  (Hernandez Decl., ¶ 8; Favarote Decl., ¶ 9.) The average rate of pay among this group of employees was approximately $13.46 during this time period.  (Id.)  This group of employees worked approximately 192,881 workweeks during the relevant time period.  (Favarote Decl., ¶ 9.)

b.   Claim #1: Wage Statement Claim. Plaintiffs allege that Defendants failed to provide the putative class members with complete and accurate wage statements under Labor Code Section 226(a).  Plaintiffs alleged that Defendants failed to comply with their obligation to comply with California Labor Code § 226 "[i]n every pay period of the relevant statute of limitations … .  (Favarote Decl., Ex. B, ¶¶ 137-151.)  Labor Code 226(a) provides a maximum aggregate penalty of $4,000 per affected employee. Where a statutory maximum is specified, "courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met."  Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). Thus, based on Plaintiffs' allegations, **the amount in controversy for this claim would be approximately $4,777,900** (calculated as: 48,780 total pay periods worked by the 2,002 putative class members through the relevant time period x $50.00 for the first pay period in violation (2,002 x $50 = $101,100) and $100.00 for each subsequent pay period in violation, not to exceed $4,000 per class member (46,778 x $100 = $4,677,800)).  (Hernandez Decl., ¶ 6; Favarote Decl., ¶ 7.)

c.   Claim #2: Waiting Time Penalties. Plaintiffs allege that Defendants willfully failed to pay the putative class members all straight time and overtime wages due, meal period premiums, and/or rest period premiums at the time of the employee's separation of employment.  (Favarote Decl., Ex. B, ¶¶ 154-161.)  California Labor Code Section 203 provides that a former

14.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

employee shall receive regular daily wages for each day they were not paid, at their hourly rate, for up to thirty days.  A total of 1,362 members of the proposed class separated from employment during the three-year statutory time period. (Hernandez Decl., ¶ 7).  **The amount in controversy for this claim would be approximately $3,942,172** ($12.06 as the average hourly rate for the putative class members x 8 hours x 30 days x 1,362 putative class members).  (Hernandez Decl., ¶ 7; Favarote Decl., ¶ 8.)

        d.       Claim # 3: Wage Theft/Time Shaving. Plaintiffs allege that Defendants "had a continuous policy of not paying Plaintiffs and those similarly situated for all hours worked.  Specifically, Plaintiffs allege that Defendants have not paid for all time employees worked throughout the day. Including, but not limited to rounding, before 'shifts' start, after 'shifts' end, and/or any other time in the day when the employees were performing work tasks, subject to the control of employer and/or otherwise had work duties." (Favarote Decl., Ex. B, ¶ 86.)  Plaintiffs also alleges that "Defendants and/or DOES have a continuous and consistent policy of clocking-out Plaintiffs and those similarly situated for a thirty (30) minute meal period, even though Plaintiffs and all members of the Class work through their meal periods." (Favarote Decl., Ex. B, ¶ 87.)  Assuming conservatively, for purposes of this analysis only, that Defendants illegally deducted 30 minutes of just straight time pay from each of the putative class member because of the alleged auto deduction for a 30 minute meal period and employees having to work through their meal period four (4) days per week,[3] **the amount in controversy for this**

---

[3] This is a reasonable translation of Plaintiffs' allegation that these violations occurred "continuous[ly]," "consistent[ly]," "regularly," and "routinely."  (Favarote Decl., Ex. B, ¶¶ 58, 108.)  See, e.g., Johnson v. U.S. Vision, Inc., 2010 WL 3154847, at *3 (S.D. Cal. 2010) (finding that where the plaintiff did not provide clarifying language, it was reasonable for the defendant to assume that "routinely and systematically," as used in the complaint, meant "each and every day").

15.

**aspect of the above claim would be approximately $5,192,356** (calculated as: the average hourly rate of pay for all 2,866 employees of $13.46 (per hour) x 0.5 hours of time per day x 4 occurrences per week x 192,881 workweeks worked by this group of employees during the relevant time period). (Hernandez Decl., ¶ 8; Favarote Decl., ¶ 9.)

33.     <u>Total Amount in Controversy</u>. Based on the claims described above, the class-wide liability exposure is, conservatively estimated, at least $13,912,428.

34.     This amount exceeds the $5,000,0000 CAFA minimum before ever taking into account attorneys' fees and interest as well as Plaintiff's meal period, rest break and overtime claims, which as discussed below must also be taken into account and adds even more to the total amount in controversy.

## ATTORNEYS' FEES

35.     When the underlying substantive law provides for the award of attorneys' fees, a party may include that amount in their calculation of the amount in controversy.  <u>Galt G/S v. JSS Scandinavia</u>, 142 F.3d 1150, 1156 (9th Cir. 1998). The Court may take into account reasonable estimates of attorneys' fees when analyzing disputes over the amount in controversy.  <u>See</u> <u>Brady v. Mercedes-Benz USA, Inc.</u>, 243 F.Supp.2d 1004, 1010-11 (N.D.Cal.2002).  Plaintiffs have sought attorneys' fees in the First Amended Complaint which are permitted by California Labor Code sections 218.5 and 1194 for some of the Labor Code violations alleged in the First Amended Complaint.  (Favarote Decl., Ex. B.)  They should therefore be included in analyzing the amount in controversy.

36.     Any addition of attorneys' fees would be over and above the amount calculated for alleged damages as analyzed above, and would further increase the amount in controversy far beyond the required $5,000,000 threshold for CAFA jurisdiction.

37.     Accordingly, diversity, class size, and amount in controversy under CAFA are satisfied for jurisdiction under 28 U.S.C. §§ 1141 and 1446.  In addition,

16.

the Court has federal question jurisdiction as discussed above.  Therefore,
Defendants have properly removed the State Court Action to this Court.

## **THE REMOVAL IS TIMELY**

38.     As required by 28 U.S.C. section 1446(d), this Notice of Removal is
timely in that it has been filed within thirty (30) days of Defendants' first receipt of
the Summons and First Amended Complaint.[4]

39.     As required by 28 U.S.C. section 1446(d), Defendant will give notice of
this removal to Plaintiffs through their attorneys of record.

40.     As required by 28 U.S.C. section 1446(d), a copy of this Notice will be
filed with the Superior Court of the State of California in and for the County of
Alameda.

WHEREFORE, having provided notice as is required by law, the above-titled
action should be removed from the Superior Court for the County of Alameda to this
Court.

Dated:  July 5, 2017                                    GLEASON & FAVAROTE, LLP
                                                        PAUL M. GLEASON
                                                        TOREY JOSEPH FAVAROTE


                                                        By:   /s/ Torey Joseph Favarote
                                                              Torey Joseph Favarote

                                                        Attorneys for Defendants
                                                        TRANSDEV SERVICES INC. and
                                                        TRANSDEV NORTH AMERICA,
                                                        INC.

---

[4] Defendants were never served with the original Complaint.

**DEFENDANT TRANSDEV SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

## PROOF OF SERVICE

I, Thomas Steinhart, declare:

I am and was at the time of the service mentioned in this declaration, employed in the County of Los Angeles, California.  I am over the age of 18 years and not a party to the within action.  My business address is Gleason & Favarote, LLP, 4014 Long Beach Boulevard, Suite 300, Long Beach, CA 90807.

On July 5, 2017, I served a copy(ies) of the following document(s):

**DEFENDANT TRANSDEV SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

on the parties to this action by placing them in a sealed envelope(s) addressed as follows:

| Attorney | Party(ies) Served | Method of Service |
|---|---|---|
| William Turley, Esq.<br>David Mara, Esq.<br>Jamie Serb, Esq.<br>Katherine McCall, Esq.<br>The Turley & Mara Law Firm, APLC<br>7428 Trade Street<br>San Diego, CA 92121<br>Tel: (619) 234-2833<br>Fax: (619) 234-4048 | Attorneys for DERRICK SCOTT, on behalf of himself, all others similarly situated, and on behalf of the general public | First Class Mail |
| ☒ | [BY MAIL]  I placed the sealed envelope(s) for collection and mailing by following the ordinary business practice of Gleason & Favarote, LLP, Long Beach, California. I am readily familiar with Gleason & Favarote, LLP's practice for collecting and processing of correspondence for mailing with the United States Postal Service, said practice being that, in the ordinary course of business, correspondence with postage fully prepaid is deposited with the United States Postal Service the same day as it is placed for collection. | |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and this declaration was executed on July 5, 2017, at Long Beach, California

_Thomas Steinhart_

1.